FILED

2023 Mar-23  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ROAD SPACE MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-01868-SGC |
| | ) | |
| CITY OF BIRMINGHAM, | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

In 2018, the plaintiff, Road Space Media, LLC, sought to construct 38 billboards within the City of Birmingham, the defendant. Road Space did not own any billboards within the City, and so it submitted a sign permit application for each of its proposed 38 billboards. Each application noted, among other things, the billboard's proposed location and size, but none of the applications reflected the content Road Space intended to display.

At that time, the City's sign ordinance contained a "cap-and-replace" provision, which essentially prohibited the construction of new billboards unless an existing billboard was replaced. The City ultimately rejected Road Space's applications based on this policy because Road Space did not demonstrate that its proposed billboards would replace existing billboards.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 15).

Even though the City never knew what messages the billboards might display, Road Space filed this lawsuit against the City, claiming the cap-and-replace ordinance was an unconstitutional *content*-based restraint. The City asserts the ordinance, which has since been repealed and replaced, was instead a content-neutral time, place, and manner restriction.

After the parties filed cross motions for summary judgment, this matter was stayed at the parties' request because the Supreme Court granted a writ of certiorari in *Reagan National Advertising of Austin, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020), a Fifth Circuit opinion upon which Road Space heavily relied in its first motion for summary judgment. Ultimately, the Court reversed the Fifth Circuit's decision, holding "a location-based and content-agnostic on-/off-premises distinction does not, on its face, single out specific subject matter for differential treatment." *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1475 (2022) (internal quotation omitted).

Following the Court's decision in *City of Austin*, the parties refiled their cross-motions for summary judgment, which are now fully briefed and ripe for adjudication.[2] (Docs. 66-74).[3] For the reasons stated below, the City's motion for

---

[2] Road Space has moved only for partial summary judgment. (Doc. 66).

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

summary judgment will be granted, and Road Space's motion for partial summary judgment will be denied.

## I.  Standard of Review

The standard of review for cross motions for summary judgment is the same as when only one party files a motion for summary judgment. *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.   Material Facts

The parties agree the facts are mostly undisputed, and most of the record on summary judgment was filed as a joint evidentiary submission. (Doc. 50).

### A. The City's Old Sign Ordinance

In 1997, the City enacted a comprehensive sign ordinance (the "Old Sign Ordinance") as a part of its overall zoning ordinance. (Doc. 50-1 at 28). The Old Sign Ordinance statement of purpose states the City sought to regulate signs "in the interest of the public safety and welfare and to safeguard and promote the aesthetic quality of the City" by establishing standards for the number, size, height, spacing, and illumination of signs. (*Id.*). Three provisions are relevant to this case: (1) the cap-and-replace provision, which governed off-premises signs and under which Road Space's applications for off-premises billboards were denied; (2) the

definition of off-premises signs, which excluded from its definition on-premises signs; and (3) the definition of on-premises signs.

An off-premises sign was "[a]ny permanent sign which directs the attention of the general public to a business, service, product or activity not conducted, offered or sold as a major portion of business upon the premises where such sign is located." (*Id.* at 219). The following were, by definition, not off-premises signs: (a) directional and other official signs authorized by law; (b) signs advertising the sale or lease of property upon which they are located; and (c) on-premises signs. (*Id.*).

An on-premises sign was "a permanent sign erected upon, and maintained in conjunction with the use of a specific parcel of property identifying the name of the place, persons or organizations occupying the premises or designating the principal use or activity or the principal product or service available on the premises." (*Id.*).

The cap-and-replace provision permitted new billboards only if the applicant demonstrated the new billboard would replace an existing billboard:

> Except as may be further restricted hereinafter, no permit for an Off-Premise Sign shall be issued without the applicant first having presented documentation of the removal of an existing sign of equal or greater size due to the voluntary sign removal by the permit holder, an accident or Act of God. All replacement signs shall be equal to or of a lesser size than the previously existing sign.

(*Id.* at 221). The parties agree this provision applied only to off-premises signs, not on-premises signs. (Doc. 67 at 6; Doc. 69 at 5). Road Space complains this

provision "makes it virtually impossible for a party, such as Plaintiff, who does not already own an Off-Premise Sign within Birmingham to obtain an Off-Premise Sign." (Doc. 67 at 6).

As a subsection of the City's overall zoning ordinance, the Old Sign Ordinance was subject to the following severability provision:

> Should any article, section, clause or provision of this Ordinance be declared by a court of competent jurisdiction to be unconstitutional or invalid, such decision shall not affect the validity of this Ordinance as a whole or any part thereof other than the part declared to be unconstitutional or invalid, each article, section, clause and provision hereof being declared severable.

(Doc. 50-1 at 14).

## B. Road Space's Billboard Applications

In April 2018, Road Space representative Keith Rice arrived at the City's Department of Planning and Permits to submit 38 applications for permits to construct new billboards throughout Birmingham. (Doc. 57 at 1). These signs were intended to display both commercial and non-commercial messages, and Road Space expected the non-commercial messages might include public service messages (like Amber alerts and FEMA and FBI alerts), political candidate advertising, school and civic events, public service campaigns, charitable messages, and other messages of public importance. (Doc. 51 at 2-3). At that point, and to date, Road Space did/does not own any preexisting, permitted off-premises signs within the City. (Doc. 51 at 3).

The City's sign application was straightforward: it asked, among other things, the site of the proposed sign; the name of the property owner/tenant; the contractor; whether the sign would have any electrical, illumination, or animation features; whether the sign was on- or off-premises; and the sign's size. (Doc. 50-2 at 4). The application did not ask the applicant to disclose the sign's message, and Road Space did not include any information about the content of the billboards. (*Id.*). Road Space did, however, check the box indicating the billboards would be off-premises signs. (*Id.*). The application also did not ask the applicant to demonstrate compliance with the cap-and-replace provision, and Road Space's applications did not include any cap-and-replace information. (*Id.*)

When Mr. Rice tried to submit the applications, Keith Bennet, a City official, told him the City was not accepting applications for new billboards. (Doc. 57 at 1-2.). After that discussion, Department Deputy Director Katrina Thomas told Mr. Rice the City would not issue any new permits unless there was proof of compliance with the cap-and-replace provision of the City's then-existing ordinance, and she provided him a copy of that provision. (*Id.* at 2; Doc. 50-11 at 5-6). Ms. Thomas did not accept the applications for formal review at that time, and Road Space did not pay any application fee. (Doc. 50-11 at 5-6; Doc. 57 at 2).

Road Space filed this action in November 2018. (Doc. 1). After the lawsuit was filed, the parties agreed the City would review Road Space's applications, and

7

Road Space submitted the 38 billboard applications through counsel in October 2019. (Doc. 67 at 4). Via a letter dated December 19, 2019, the City formally rejected Road Space's application for permits. (Doc. 50-4). The letter noted two problems with the applications: (1) they did not contain necessary street addresses, and so the City did not enter the applications into the permit tracking system; and (2) Road Space had not documented removal of existing signs of equal or greater size as required by the cap-and-replace provision, and so the City rejected the applications. (*Id.*).

### C. The New Sign Ordinance

In November 2020, the City's Department of Planning, Engineering, and Permits submitted a proposed amended sign ordinance to the City's Zoning Advisory Committee. (Doc. 70-1 at 2). At a public meeting, that committee voted unanimously to recommend approval of the ordinance. (*Id.*). Also at a public meeting, the City Council's Planning and Zoning Committee recommended the City Council approve the amended ordinance. (*Id.* at 3).

The City Council set the amendment for a December 29, 2020 public hearing. (*Id.*). Notice was published in *The Birmingham News* on December 6, 13, and 20, 2020. (*Id.*). After providing the public a chance to comment and object at the public meeting, a quorum of the City Council unanimously voted to adopt the

amended sign ordinance, and Mayor Randall Woodfin signed the ordinance into law on December 29, 2020. (*Id.* at 4).

The New Sign Ordinance does not distinguish between on-and off-premises signs, nor does it contain a cap-and-replace provision. (*Id.* at 59-73). Instead, the new ordinance primarily regulates signs based on their type (such as pole signs) and size. (*Id.*).

## III.   Procedural History

Road Space filed its complaint in November 2018, and the parties filed cross-motions for summary judgment in January 2021. (Docs. 1, 48-54). In July 2021, the City requested a stay because the Supreme Court had granted a writ of certiorari in *City of Austin*, the Fifth Circuit case upon which Road Space heavily relied in its motion for summary judgment. (Doc. 62). The pending motions for summary judgment were denied without prejudice, and this matter was stayed. (Doc. 63). After the Supreme Court issued its decision in *City of Austin*, the parties filed renewed cross-motions for summary judgment. (Docs. 65-74).

## IV.   Discussion

Birmingham argues it is entitled to summary judgment for four reasons: (1) the City repealed and amended the Old Sign Ordinance, and so Road Space's claims for declaratory and injunctive relief are moot; (2) Road Space lacks standing to challenge the ordinance's provisions other than the cap-and-replace

provision; (3) under *City of Austin*, the on-/off-premises distinction in the Old Sign Ordinance was a content-neutral time, place, and manner restriction which easily survives intermediate scrutiny; and (4) Road Space has no evidence of discriminatory intent, and so its equal protection claim fails.

Road Space argues that because it requested damages, its claims are not mooted by the repeal of the challenged ordinance. It further contends it is entitled to partial summary judgment because: (1) the sign ordinance discriminated against non-commercial speech; (2) the sign ordinance does not withstand intermediate scrutiny; and (3) the entirety of the sign ordinance was based on discrimination against non-commercial speech and should therefore be stricken in its entirety.

### A. The Law of Billboards

"[T]he law of billboards is a law unto itself." *Cafe Erotica of Fla., Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1285 (11th Cir. 2004) (internal quotations omitted; citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981)). Since 1981, billboard companies have challenged multiple municipal ordinances that limit their display, often arguing the ordinances are impermissible content-based restrictions. In response, the municipalities typically contend the ordinances are content-neutral time, place, and manner regulations.

In short, a regulation may be a valid time, place, and manner regulation if it is not based on the content of the regulated speech. *Id.* at 1286. To be

constitutional, it must also "be narrowly tailored to serve a <u>significant</u> governmental interest, and [] leave open ample alternative channels for communication of the information." *Id.* (emphasis added). Content-based regulations, however, are subject to strict scrutiny and must be narrowly tailored to serve a <u>compelling</u> state interest. *Id.* (emphasis added).

The Supreme Court and the Eleventh Circuit have both issued several opinions dealing with the constitutionality of billboard regulations. In *Metromedia*, the Supreme Court examined San Diego's sign ordinance, which allowed onsite commercial advertising but prohibited all off-premises advertisements—both commercial and non-commercial. 453 U.S. 490. There were several exceptions to this ban, such as government signs and temporary political campaign signs. A plurality of the Court found no issue with the ordinance's distinction between on-site and off-site commercial speech but ultimately found unconstitutional the part of the ordinance that prohibited all other billboards: "[i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of non-commercial messages." *Id.* at 511-513.

In 1992, the Eleventh Circuit reviewed Douglasville, Georgia's sign ordinance, which distinguished between on- and off-premises billboards. *Messer v.*

*City of Douglasville, Ga.*, 975 F.2d 1505 (11th Cir. 1992). Douglasville defined off-premises signs as those "which direct[] attention to a building, profession, product, service, activity, or entertainment not conducted, sold, or offered on the property upon which the sign is located" and prohibited their display in Douglasville's historic downtown district. *Id.* at 1508. By contrast, on-premises signs were permitted within the district. *Id.* Like Road Space's challenge here, Messer argued that this distinction impermissibly favored commercial speech over non-commercial speech. The court disagreed and instead held the regulation was content neutral and thus constitutional:

> Contrary to Messer's argument, there is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech. A non-commercial enterprise would be able to put up a sign bearing a non-commercial message as long as it relates to an activity on the premises. Similarly, a commercial enterprise would be able to put up a sign bearing a non-commercial message which related to any activity on the premises. For example, an auto mechanic's garage would be able to put up a noncommercial message relating to the recycling of used motor oil.

*Id.* at 1509.

In 2005, the Eleventh Circuit considered another sign ordinance. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250 (11th Cir. 2005). Solantic did not obtain a permit before building a digital billboard on its premises, and so it received several citations. Solantic successfully argued Neptune City's sign code was "a facially unconstitutional content-based restriction on speech, since it

exempt[ed] from its regulations some categories of signs, based on their content, but not others." *Id.* at 1258.

The Supreme Court examined another sign ordinance in *Reed v. Town of Gilbert, Arizona* 576 U.S. 155 (2015). The Town of Gilbert treated several categories of signs differently based on their content: some signs were exempted from the sign ordinance's permit requirement entirely, and each sign category received different levels of treatment and was subject to different requirements regarding the amount of time the signs could remain in place and how many signs could be at any one location. *Id.* at 160. The Court found these regulations were content-based and thus presumptively unconstitutional. *Id.* at 164. In a concurring opinion, Justice Alito wrote that the *Reed* opinion did not mean "municipalities are powerless to enact and enforce reasonable sign regulations" and that a permissible, non-content-based rule would include "[r]ules regulating the locations in which signs may be placed. These rules may distinguish between . . . on-premise and off-premise signs." *Id.* at 174–75 (Alito, J., concurring).

Finally, in April 2022, the Supreme Court issued its decision in *City of Austin*, a case analogous to this one. There, the Court examined whether Austin's prohibition on off-premises signs and billboards was a content-based regulation. The Fifth Circuit had ruled that, under *Reed*, the ordinance was automatically a content-based restriction and therefore subject to strict scrutiny because the on-

/off-premises distinction required a reader to inquire "who is the speaker and what is the speaker saying," "both hallmarks of a content-based inquiry." *Reagan Nat'l*, 972 F.3d at 706. The Court rejected this approach, instead holding a speech regulation is content-based only where it "'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" 142 S. Ct. at 1471 (quoting *Reed*, 576 U.S. at 163). Even if the City had to read the sign to evaluate its compliance with a regulation, the regulation did not "single out any topic or subject matter for differential treatment." *Id.* at 1472. Austin's off-premises sign regulation did not prohibit any sign based on its underlying message, but it instead considered only whether the sign was located on "the same premises as the thing being discussed or not." *Id.* at 1472-73. Because "the City's off-premises distinction require[d] an examination of speech only in service of drawing neutral, location-based lines" and was "agnostic as to content," the Court concluded the regulation was content neutral on its face. *Id.* at 1471. Therefore, the ordinance was subject to intermediate scrutiny unless there was some evidence of an impermissible, content-based purpose for the regulation. *Id.* at 1475–76. The Court remanded the case to the Fifth Circuit to address whether the ordinance survived intermediate scrutiny or whether there was evidence demonstrating a need to strictly scrutinize the ordinance. *Id.* at 1476.

14

**B. Road Space's Facial Challenge**

The City first argues the repeal of the Old Sign Ordinance renders Road Space's claims moot. "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy" when Road Space filed this lawsuit. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). Because mootness is a threshold question that implicates jurisdiction, the court will address it first. *See Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1327 (11th Cir. 2004).

While a defendant's voluntary cessation of the offending conduct does not necessarily prevent a court from hearing a case, the case is mooted where "'subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior [can] not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *U.S. v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). Governmental entities are "given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs*, 371 F.3d at 1328-29. In the absence of evidence it will be reenacted, the repeal of a challenged statute is the type of event that makes clear the allegedly wrongful conduct can not reasonably be expected to recur. *See Coral Springs*, 371 F.3d at 1329.

In the case of a repealed ordinance, the plaintiff must provide evidence that leads to a reasonable expectation the governmental entity will reenact the challenged ordinance if the court finds the matter moot. *Flanigan's Enterprises, Inc. of Ga v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1256 (11th Cir. 2017) (abrogated on other grounds by *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)). The district court considers three broad factors: (1) whether the repealed ordinance resulted from substantial deliberation or is merely an attempt to deprive the court of jurisdiction; (2) whether the government's decision to repeal the ordinance was unambiguous; and (3) whether the government has consistently maintained its commitment to the new legislative scheme. *See id.* at 1257. No one factor is exclusive or dispositive; instead, all relevant circumstances should be considered, and the court should find the matter is moot if the totality of the circumstances persuades the court that there is no reasonable expectation the government will reenact the challenged ordinance. *See id.*

The enactment of the New Sign Ordinance meets all three factors. It is the result of substantial deliberation, and there is no evidence or other indication it is merely an attempt to deprive the court of jurisdiction. The City's decision to repeal and replace the Old Sign Ordinance is unambiguous—the New Sign Ordinance substantially changes and replaces in full the Old Sign Ordinance. Finally, there is

no evidence or suggestion the City has not maintained its commitment to the New Sign Ordinance.

Road Space does not challenge these factors. Instead, it argues its request for damages saves its claim. The court agrees the repeal of the Old Sign Ordinance does not moot Road Space's lawsuit in its entirety. *See Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112 (11th Cir. 2003) ("Because Granite State has requested damages, however, the changes made to the ordinance do not make this case moot."). The repeal does, however, affect the *type* of challenge Road Space may continue against the Old Sign Ordinance.

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *U.S. v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). "First Amendment facial challenges are rendered moot where the challenged law is repealed and 'the court is sufficiently convinced that the repealed law will not be brought back.'" *New S. Media Grp., LLC v. City of Huntsville, Ala.*, No. 5:20-CV-2050-LCB, 2021 WL 5822133, at *12 (N.D. Ala. Oct. 1, 2021) (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005)).

Here, Road Space contests the denial of its sign applications based on the cap-and-replace provision and insists this provision was the sole basis for the denial. This as-applied challenge is not mooted by the repeal of the Old Sign Ordinance. Road Space also attacks the Old Sign Ordinance because, like in

*Solantic*, 410 F.3d 1250, it exempted several categories of signs, such as construction signs, flags, and political signs. (Doc. 67 at 27). Road Space argues it has standing to bring this overbreadth challenge because it has established it suffered an injury in fact, citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006). But neither *KH Outdoor* nor *Solantic* involve a facial attack to a repealed ordinance, and Road Space has not cited any case permitting such a challenge to proceed. In fact, the Eleventh Circuit has held a billboard company lacks standing to continue an overbreadth challenge to a sign ordinance's content-based exemptions after that ordinance has been repealed. *See Tinsley Media, LLC v. Pickens Cnty., Ga.*, 203 F. App'x 268, 274 (11th Cir. 2006).

In 2021, another judge of this court reached the same conclusion. *See New South Media Group, LLC*, 2021 WL 5822133. There, New South challenged Huntsville's distinction between accessory and non-accessory signs; an accessory sign was related to the business or service on the premises, and a non-accessory sign was unrelated to the business or service on the premises. After New South filed a lawsuit challenging the denial of its sign applications, Huntsville amended its sign ordinance. *Id.* at *8.

The court found New South's facial challenge to the former sign ordinance was moot. *Id.* at *12-13. It further held New South lacked standing to challenge any provision of the ordinance that did not cause the denial of its applications: "In

18

billboard litigation, a plaintiff only has standing to challenge the provisions of a law which caused its injury or provisions of the law which will (or would have) imminently caused such injury." *Id.* at 12 (citing *Roma Outdoor Creations, Inc. v. City of Cuming, Ga.,* 599 F. Supp. 2d 1332, 1339 (N.D. Ga. 2009), in turn citing *Granite State*, 351 F.3d at 1114).

Because the Old Sign Ordinance has been repealed, Road Space is limited to an as-applied challenge to the Old Sign Ordinance. Accordingly, the only remaining question is whether the cap-and-replace provision was constitutionally applied to Road Space.

### C. The Cap-and-Replace Provision

*City of Austin* makes clear the Old Sign Ordinance's cap-and-replace provision was content neutral. While the Old Sign Ordinance treated off-premises signs less favorably by limiting their number and location, this distinction was content neutral. *See* 142 S. Ct. at 1473. The City never examined the content of any proposed speech—the applications contained no information about the messages the billboards would contain. Instead, the City reviewed the applications to determine whether Road Space intended to locate the signs on- or off-premises and, if off-premises, whether the cap-and-replace provision was satisfied. To the extent this can be described as an examination of speech, like in *City of Austin*, it is "an examination of speech only in service of drawing neutral, location-based

lines." *Id.* at 1471; *see also Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Florida*, 348 F.3d 1278, 1282 n.3 (11th Cir. 2003) (noting that even though the city's sign examiner reviewed the sign's content, this review was limited to determining whether the sign related to on-premises activity or off-premises activity and no official was able to reject an application based on the proposed content).

Road Space tries to evade this conclusion by mounting a somewhat complicated argument the Old Sign Ordinance was hostile to non-commercial speech because its definitions of on-premises signs, off-premises signs, and product advertising signs focused on the commercial activity being performed at the property upon which the sign is located. According to this theory, on-premises signs could contain only commercial messages, and so non-commercial messages were relegated to off-premises signs, the number of which were restricted by the cap-and-replace provision. As Road Space would have it, because on-premises signs were not subject to the cap-and-replace provision, the Old Sign Ordinance favored commercial speech over non-commercial speech and was thus content-based.

The parties agree Road Space can challenge the definition of on-premises sign, presumably because the definition of off-premises sign referred to on-premises signs. But the court is not fully convinced Road Space has standing to

challenge this definition in this as-applied challenge given Road Space sought to construct only *off*-premises signs. Even if the Old Sign Ordinance prohibited non-commercial speech on on-premises signs, a limitation on the content of *on*-premises signs did not cause the denial of Road Space's applications for *off*-premises signs.

But the on-/off-premises distinction did not, as Road Space argues, turn on whether the sign's message is commercial or non-commercial, and Road Space's argument that on-premises signs could contain only commercial speech is too narrow a reading of the definition. Like in *Messer,* under the Old Sign Ordinance, a non-commercial enterprise could display a sign bearing a message (whether commercial or non-commercial) that designates "the principal use or activity or the principal product or service available on the premises." *See, e.g., Messer*, 975 F.2d at 1509. For example, the on-premises definition would permit the YWCA of Central Alabama, whose website proclaims it is "on a mission to eliminate racism, empower women and promote peace, justice, freedom, and dignity for all," to display a sign that says, "Eliminate Racism, Empower Women." In fact, this message is displayed on a mural on the building housing My Sister's Closet, a component of the YWCA designed to help domestic violence survivors find

clothing for interviews, appearances and work settings.[4] This message—"Eliminate racism, empower women"—is not a commercial one, and yet it designates the principal activity of the YWCA. Similarly, a church which displayed a sign on its campus stating, "Worship the Lord!" or "Know God"—non-commercial messages—would not run afoul of the on-premises definition if the principal use of its property was to host worship services.[5]

Further, any issue with the on-premises definition is resolved by the zoning ordinance's severability clause. Severability is a question of state law. *KH Outdoor*, 366 F. Supp. At 1144. In Alabama, courts should give considerable weight and deference to legislative acts: "[c]ourts will strive to uphold acts of the legislature. The inclusion of a severability clause is a clear statement of legislative intent to that effect . . . " *City of Birmingham v. Smith*, 507 So. 2d 1312, 1315 (Ala. 1987). Severing the allegedly offending on-premises definition leaves the following text:

---

[4] The court takes judicial notice of this display, located only a few blocks from the Hugo L. Black United States Courthouse. *See* Fed. R. Evid. 201(b)(1), (c)(1).

[5] Road Space complains that during depositions it asked two city officials whether the message "Support Our Troops" qualified as an on-premises sign, but both officials responded they would need to seek guidance from the City's Attorney. According to Road Space, "[i]f the individuals charged with enforcing the Original Sign Ordinance could not affirmatively state that such a noncommercial message was permitted on an On-Premise sign, it must be concluded that the ordinance did not permit such noncommercial messages." (Doc. 71 at 17-18). This argument is unpersuasive; it is not surprising a non-lawyer would seek an attorney's opinion in interpreting a law, and Road Space cites no authority to support this argument.

6. Off-Premise Sign. Any permanent sign which directs the attention of the general public to a business, service, product or activity not conducted, offered, or sold as a major portion of business upon the premises where such sign is located. None of the following shall be deemed an Off-Premise Sign:

    a. Directional and other official signs authorized by law.

    b. Signs advertising the sale or lease of property upon which they are located.

    ~~c. On-Premise Signs.~~

~~7. On-Premise Sign. A permanent sign erected upon, and maintained in conjunction with the use of a specific parcel of property identifying the name of the place, persons or organization occupying the premises or designating the principal use or activity or the principal product or service available on the premises.~~

Removing the on-premises references leaves the off-premises definition "complete within [itself], sensible, and capable of execution," and so the ordinance can stand even if the on-premises definition is invalid. *See Wilkins v. Woolf*, 208 So. 2d 74 (1968) (*overruled on other grounds*, *Tanner v. Tuscaloosa Cnty. Comm'n*, 594 So. 2d 1207 (Ala. 1992)). Even if Road Space successfully challenged the on-premises sign definition, the severance remedy would not redress the harm Road Space alleges to have suffered—its inability to construct undeniably off-premises signs because of the cap-and-replace provision.

### D. Intermediate Scrutiny

The Old Sign Ordinance's cap-and-replace provision limited the number and location of off-premises signs. It did not target speech based on its communicative

content nor aim to supress any particular viewpoint, and so it was a content-neutral restriction subject to intermediate scrutiny unless Road Space provides "evidence that an impermissible purpose or justification underpins" the cap-and-replace provision. *See City of Austin*, 142 S. Ct. at 1475-76. Road Space has not met that showing, so the cap-and-replace provision is subject to intermediate scrutiny; in other words, it must be "narrowly tailored to serve a significant governmental interest." *See id.* Thus, the City must show (1) the cap-and-replace provision advanced a substantial governmental interest, and (2) the provision was narrowly tailored and left open ample channels of communication. *See New South Media Group*, 2021 WL 5822133 at *14.

The cap-and-replace provision supported the City's substantial interest in public safety and welfare and safeguards and promoted the aesthetic quality of the City by establishing standards for the number, size, height, spacing, and illumination of signs. Road Space contends aesthetics and traffic safety concerns are not substantial governmental interests and the Old Sign Ordinance cannot survive an intermediate scrutiny analysis. It mainly argues the City cannot show that content-based discrimination impacts aesthetics or public safety. But as explained above, the cap-and-replace provision was not content-based. Road Space also complains the City must provide additional evidence to demonstrate how the cap-and-replace provision addressed public safety and aesthetic concerns. But the

Supreme Court has recognized that "billboards by their very nature . . . can be perceived as an 'esthetic harm.'" *Metromedia*, 453 U.S. at 510. And as the City notes, it is well-settled that the City "may legitimately exercise its police powers to advance its aesthetic interest," which is a recognized substantial governmental interest. *Messer*, 975 F.2d at 1510.

The cap-and-replace provision was narrowly tailored and left open ample channels of communications. Road Space does not address this point in its briefing. As the City points out, *Metromedia* did not take issue with the complete prohibition of offsite commercial billboards. *See* 453 U.S. at 508. But the City's regulation was narrower than the one in *Metromedia*: rather than prohibiting billboards entirely, it instead prohibited the construction of new billboards absent proof an existing billboard had been removed. True, Road Space could not construct new billboards on which to sell messaging space, but there were many existing billboards if it wished to display its own messages within the City.[6]

The cap-and-replace provision was a content-neutral, location-based regulation. It was narrowly drawn to advance a substantial governmental interest, and it left open ample channels of communication. Accordingly, Road Space's First Amendment rights were not violated by the denial of its applications, and its claims fail as a matter of law.

---

[6] The court takes judicial notice of the existence of many billboards within the City, in which this court is located. *See* Fed. R. Evid. 201(b)(1), (c)(1).

### E. Equal Protection Claim.

Road Space has not responded to the City's argument that summary judgment is due to be granted on Road Space's equal protection claim. "Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted . . ." *Chapman v. AI Transp.*, 229 F.3d 1012, 1027 (11th Cir. 2000); *see also Goldman v. Bracewell & Guiliani, L.L.P.*, 183 F. App'x 873 (11th Cir. 2006) (per curiam) (plaintiff's failure to respond to defendant's arguments on summary judgment constituted wavier); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 & n.6 (11th Cir. 2003) (issue not briefed in response to summary judgment motion deemed abandoned). By failing to respond to the City's argument, Road Space has abandoned this claim. Consequently, the City's motion for summary judgment is granted on Road Space's equal protection claim.

## V.   Conclusion

For all the foregoing reasons, the City is entitled to judgment as a matter of law, and its motion for summary judgment will be granted in its entirety. Road Space's motion for partial summary judgment will be denied. A separate order will be entered.

**DONE** this 23rd day of March, 2023.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE